BOGGS, Circuit Judge,
concurring in part and dissenting in part.
I join the majority’s opinion as to all matters except those discussed in Parts II.b.2.A-C. I agree that the Commission erred in affirming the ALJ’s decision as to Highland’s decision to terminate Pendley; the decision-maker put forth cumulative reasons for termination that the ALJ effectively treated as independent and sever-able, and hence I concur in the order remanding to the Commission to explain the apparent discrepancy between its decision and its previous holdings McGill and Chacon. I further agree that prudential concerns counsel against our deciding the question of whether the “objective reasonable worker standard” enunciated by the Supreme Court in Burlington Northern & Santa Fe Railway Co. v. White applies to cases brought under Section 105(c) of the Mine Act.
I disagree, however, with the majority’s treatment of the Commission’s decision as to Pendley’s post-reinstatement working conditions, and would hold that there was no error in the Commission’s determination that Pendley’s assignment to new duties upon reinstatement was not “adverse action” under the Mine Act. In particular, the majority would read the decision of the Commission as holding that Pendley’s new working conditions were not adverse action merely because they were within his job classification or, alternatively, because they were not more responsibility than he could handle in an eight-hour shift.
I do not read the Commission’s decision as resting solely on those considerations. In fact, the discussions in the opinions below of Pendley’s job classification and ability to handle his new duties within an eight-hour shift are themselves responses to Pendley’s own arguments that those duties were distasteful and/or represented an increased workload. It is illogical to believe that a company cannot respond to allegations that they are overworking an employee by pointing out that the employee’s duties can be accomplished within his scheduled shift, or that it cannot counter accusations that an employee’s job duties are particularly arduous or demeaning by pointing out, as Highland did, that they are within the employee’s job description *430 and have been performed by others with that same job description.
Nor is Commission precedent to the contrary. The majority correctly identifies Glover as the most on-point decision in this case, but, in my view, the majority misconstrues Glover. The Commission in that case had before it a situation in which mine mechanics had been transferred from a relatively safe “shop area that measured 18 feet by 70 feet with rock walls, a beamed ceiling, and a cement floor” to an area in the working section of the mine, “where they worked high voltage electrical equipment and were exposed to hazards such as dust, methane, and roof falls.” Glover, 19 F.M. S.H.R.C. at 1529, 1531. While acknowledging that the transfers changed neither the employees’ job classifications nor their salary rates, the Commission nevertheless concluded that “[b]e-cause the record established that work on the sections was more dangerous, we reject [the] assertion that the transfer was merely an action that the miners disliked.” Id. at 1535 (emphasis added). Neither Glover nor any other Commission decision holds that job classification and the time required to complete the new job duties are irrelevant to the question of whether those duties constitute “adverse action.” Rather, Glover recognizes that mine employees are frequently exposed to danger in greater or lesser measure irrespective of their job titles or working hours, and can thereby be subjected to “adverse action” in a different way (and one of particular salience to miners).
Thus, while the majority is correct to observe that an employer cannot insulate itself from liability in all cases simply by establishing that a miner’s new duties are within his job classification and can be done in the time allotted, there is no basis for construing Glover as extending to situations in which the new duties are not more dangerous than the old. The Commission’s decision in this case reflects this understanding; it explicitly compares Pendley’s case to Glover, describing its prior holding as one in which a “transfer of miners [was] found to be unlawful where [the employees’] new position was less desirable and more hazardous and the adverse action was motivated by protected activity.” Comm’n Dec. at 21 (emphasis added). Certainly Pendley introduced no evidence — or even argued — that his duties on reassignment were more hazardous than those he had performed before. Therefore, there is no reason to believe that, in this case, Highland’s reassignment of job duties vis-a-vis Pendley was anything more than “an action that [he] disliked.” [1]
A case in which a miner is reassigned to significantly more dangerous duties that nevertheless fall within that miner’s job *431 description and can be performed within his assigned shift is a case that ought not, under Commission precedent, be dismissed for want of “adverse action.” Such a case would squarely implicate the kind of retaliatory measures forbidden by the Mine Act. Such a case is not, however, this case. I respectfully dissent as to Parts II.b.2.AC of the majority’s opinion.[2]

. The majority appears to think I read Glover to mean that a within-classification reassignment can never be adverse action unless the new duties are more dangerous than the old, a conclusion "not mandated by the holding” in that case. See Maj. Op. at 427 n. 5. I assert that such a conclusion is not required by Glover, but that is not the operative question in this case. According to both my understanding and the majority’s, the question is whether ”[t]he Commission's ruling as to Petitioner’s job classification is inconsistent with Mine Act precedent.” Maj. Op. at 426 (emphasis added); see also Maj. Op. at 423 ("The Court must ... give Chevron deference to the Commission’s reasonable interpretation of ambiguous provisions of the Mine Act.”). I have found no Commission decision extending Glover’s rationale-itself explicitly predicated on an increase in the employee's greater exposure to physical harm-to situations in which the new job duties are not more dangerous than the old, nor does the majority cite to one. Thus, while the majority (and perhaps I) may think such an extension to be appropriate, the Commission’s failure to do so in this case is not inconsistent with precedent, and is not error.

. The majority’s reasoning in its Part II.b.2.C, “Evidence of Discriminatory Intent,” is by its terms dependent on a finding that Pendley’s new duties were “adverse action.” Though its internal logic is sound, I dissent from it because I disagree with its premise.